IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Joel I. Sher, Chapter 11 Trustee, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB 10-1895 |
| SAF Financial, Inc., *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Counterclaimants Larry A. Goldstone ("Goldstone") and Clarence G. Simmons, III ("Simmons") (collectively, "Goldstone and Simmons" or "Counterclaimants"), have filed a two count counterclaim against the Debtor TMST, Inc. ("TMST") asserting negligent misrepresentation (Count One) and conversion (Count Two). Joel I. Sher, Chapter 11 Trustee for TMST, Inc., f/k/a Thornburg Mortgage, Inc., moves to dismiss both counterclaims. The parties have fully briefed the issues and this Court held a hearing on this matter on April 8, 2011. For the reasons stated on the record at the April 8, 2011 hearing and for the reasons that follow, TMST's Motion to Dismiss Goldstone and Simmons's Counterclaims (ECF No. 97) is DENIED.

**BACKGROUND**

The facts of this case have been previously recounted in detail in this Court's Memorandum Order of October 14, 2010. *See* ECF No. 61. Thus, the facts need only be briefly restated here in order to provide some context for the two counterclaims at issue.

Counterclaimant Goldstone worked at Debtor TMST as Director, Chief Executive Officer and President, and Simmons served as TMST's Chief Financial Officer and Senior Executive

1

Vice President. On or about May 1, 2009, Debtor TMST filed a voluntary bankruptcy petition in the Bankruptcy Court for the District of Maryland. On September 15, 2009, Goldstone and Simmons resigned from TMST at the Board's request. On October 23, 2009, the Bankruptcy Court appointed Joel I. Sher as Chapter 11 Trustee. On November 23, 2009, TMST filed a complaint against Goldstone and Simmons in an adversary proceeding in the Bankruptcy Court demanding that they return to TMST boxes containing any TMST property that they had removed on or about September 11, 2009. The parties negotiated a Consent Order to resolve these issues, which the Bankruptcy Court entered on December 2, 2009.

On March 2, 2010, TMST filed another complaint against a number of defendants, including Goldstone and Simmons, in a separate adversary proceeding in the Bankruptcy Court. This complaint alleges that in October 2007, TMST began exploring a strategy of creating a federally-chartered thrift bank. TMST claims that over the next two years it invested over $2 million to explore and further this confidential "thrift strategy." The complaint alleges that in March 2009, Goldstone and Simmons decided to pursue this thrift strategy for their own personal monetary gain to establish a company initially referred to as "Newco," using TMST's confidential legal and financial work to do so. Thus, the Complaint asserts that Goldstone and Simmons converted millions of dollars of TMST's property for their own use. On July 22, 2010, this Court entered an order granting the withdrawal of the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d).

On December 13, 2010, Goldstone and Simmons filed a counterclaim against TMST alleging negligent misrepresentation and conversion. ECF No. 83 As to their negligent misrepresentation claim, Goldstone and Simmons assert that they consulted and notified TMST's directors about Newco, and that they were assured that TMST was incapable of pursuing the

2

thrift strategy, therefore Goldstone and Simmons were free to do so on their own. Counterclaimants allege, for example, that the topic of Newco came up at a TMST Board of Directors meeting on April 26, 2009, at which three Venable LLP attorneys were present. Goldstone and Simmons allege that the Venable attorneys advised the Board that TMST's directors and officers should not be held liable for pursuing their own corporate opportunities if TMST could not do so on its own. As to their conversion claim, Goldstone and Simmons allege that TMST was notified that it had Counterclaimants' confidential and personal property but has refused to return these and other items. On December 30, 2010, TMST filed the pending Motion to Dismiss Goldstone and Simmons's counterclaims. ECF No. 97.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, a Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Simmons v. United Mort. and Loan Inv., LLC*, __ F.3d __, 2011 WL 184356, at *10 (4th Cir. Jan. 21, 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Thus, a court considering a motion to dismiss "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Well-

3

pleaded factual allegations contained in the complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference. *See Twombly*, 550 U.S. at 555 (noting that "courts are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Thus, even though Rule 8(a)(2) "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950.

To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has explained recently that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 129 S. Ct. at 1949. The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1937. Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.*

## **ANALYSIS**

Goldstone and Simmons assert two counterclaims against TMST. In Count One, Goldstone and Simmons allege that in pursuing Newco they relied upon false representations that TMST negligently made through its directors and advisors. In Count Two, Goldstone and

4

Simmons allege that TMST has wrongfully retained their personal property. TMST moves to dismiss both counts.

## I.     Negligent Misrepresentation (Count One)

TMST argues that the negligent misrepresentation counterclaim must be dismissed for two reasons. First, TMST asserts that this counterclaim is "hypothetical because no party alleges that [Goldstone and Simmons] usurped a corporate opportunity in pursuing the thrift strategy." MTD at 8. Second, TMST contends that Counterclaimants do not set forth facts that sufficiently allege a claim for negligent misrepresentation.

### A.     Corporate Opportunity

Contrary to TMST's argument, its complaint contains numerous allegations that Counterclaimants usurped TMST's corporate opportunities. In paragraph 108, for example, TMST alleges that Goldstone and Simmons, among others, failed to advise the TMST's Board "that they were already actively pursuing this [thrift strategy] opportunity for their own benefit." In paragraph 109, TMST alleges that Simmons failed to advise the Board "of the extent to which he and Mr. Goldstone had clandestinely pursued the thrift strategy for their own benefit." In paragraph 112, TMST alleges that the Board would consider at one of its meetings whether to "pass a resolution that TMAC or Mr. Goldstone was permitted to pursue the thrift opportunity." *See also* Complaint. ¶¶ 114-15. Notably, all of these allegations are either found within the specific counts themselves or specifically incorporated into the individual counts remaining against Counterclaimants. *See, e.g.*, Complaint ¶222, 228. Thus, TMST's complaint contains myriad allegations that Counterclaimants usurped its corporate opportunities. Accordingly, TMST's argument that Goldstone and Simmons's negligent misrepresentation counterclaim is based upon a hypothetical issue is without merit.

B. **Failure to State a Claim**

Goldstone and Simmons sufficiently allege the elements of a negligent misrepresentation claim under New Mexico law, which applies in this case.[1] To establish a negligent misrepresentation claim under New Mexico law, Counterclaimants must show that (1) TMST made a material misrepresentation of fact to them, (2) they relied upon this misrepresentation, (3) TMST knew the misrepresentation was false at the time it was made or made the misrepresentation recklessly, and (4) TMST intended to induce Counterclaimants to rely on such representation. *Montoya v. Penske Truck Leasing, Co., LP*, 2010 U.S. Dist. LEXIS 140834, at *17-18 (D.N.M. June 23, 2010) (citing *Healthsource, Inc. v. X-Ray Assoc. of N.M.*, 138 N.M. 70, 79 (N.M. Ct. App. 2005).

First, Counterclaimants allege that TMST made a number of untrue statements relating to whether there was any impediment to Goldstone and Simmons's ability to pursue a business venture involving the thrift. For example, Goldstone and Simmons claim that they were "assured that because TMST was incapable" of pursuing any new venture, "there was no impediment to others, including [Goldstone and Simmons], pursuing such a venture." Counterclaim ¶ 48. Counterclaimants further allege that TMST, through its management and Board, made clear that it "was no longer able to pursue the [corporate] opportunity that was originally contemplated . . . because [of] the Company's current financial circumstances . . . ." *Id.* ¶ 52; s*ee also id.* ¶¶ 54, 57, 59, 96-98.

Second, Goldstone and Simmons allege that they relied on TMST's misrepresentations that there was no impediment to their pursuing the thrift strategy to their detriment.

---

[1] At the April 8, 2011 hearing, the parties agreed that New Mexico law applies because TMST has its principal place of business in Santa Fe, New Mexico. Tr. At 23-26. They further agreed that New Mexico law is essentially the same as Maryland law on this issue. *Id.*

6

Counterclaim ¶ 101. Specifically, Counterclaimants allege that they "expended considerable time and sums of money in NEWCO, and later SAF, in reliance on such negligent misrepresentations." *Id*. ¶ 102. Third, Counterclaimants assert that TMST either knew that the misrepresentations were false, or acted recklessly in making such misrepresentations. Goldstone and Simmons claim that TMST's representations were made negligently and "without reasonable care or competence." *Id*. ¶¶ 99-100. Fourth, Goldstone and Simmons put forth that TMST, through its directors and advisors, "intended that Goldstone and Simmons would rely on the above representations, and that they would pursue the SAF-Union Savings transaction." *Id*. ¶ 98. Accordingly, Goldstone and Simmons's claims in Count One establish the elements of a negligent misrepresentation claim under New Mexico law, and TMST's Motion to Dismiss Count One is denied.

## II.  Conversion (Count Two)

In Count Two, Goldstone and Simmons allege that following the termination of their employment, TMST wrongfully accessed and retained their personal property, including "access to confidential documents and information" that belonged to Goldstone and Simmons and was located on their computers and servers. Counterclaim ¶¶ 103-09. TMST argues that this conversion claim must be dismissed because Goldstone and Simmons "allege that [TMST] has possession of their property, but the Consent Order explains that the Bankruptcy Court is to resolve such a claim." MTD at 11. TMST also asserts that the conversion claim is insufficiently specific to identify the alleged stolen property.

Regarding TMST's first argument, this Court finds that the scope of the conversion claim is broader than the purview of the Consent Order. The Consent Order states that the Bankruptcy Court would resolve claims regarding the two laptop computers and forty boxes of documents

7

that Goldstone and Simmons removed from TMST's Santa Fe offices. Consent Order at 2. Thus, this Order does not address the electronically stored information at issue in Count Two of Goldstone and Simmons's Counterclaim. Notably, Count Five of TMST's Complaint demands turnover of estate property, thereby reflecting that TMST itself does not consider the Consent Order to have resolved all of the issues in this case regarding stolen information and documents.

Count Two is sufficiently detailed to meet the pleading standards required under *Iqbal* and *Twombly*. As the Supreme Court of New Mexico has stated, "[c]onversion is the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." *In re Yalkut*, 176 P.3d 1119, 1126 (N.M. 2008). Goldstone and Simmons specifically allege in their counterclaim that TMST advisors bypassed security measures established by Goldstone and Simmons to provide confidentiality for documents and materials both they and SAF owned, and which were being stored in computers in SAF's offices. Counterclaim ¶ 85. Counterclaimants assert that TMST obtained access to these materials and, despite knowing that that the documents contained confidential information, disclosed the information to third parties without Goldstone's or Simmons's permission. *Id*. Goldstone and Simmons also allege that TMST continues to unlawfully maintain "dominion and control" over these documents. *Id*. ¶ 105. These claims allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Accordingly, Goldstone and Simmons's claims in Count Two establish the elements of a conversion claim TMST's motion to dismiss Count Two is denied.

## CONCLUSION

For the reasons stated on the record at the April 8, 2011 hearing and the reasons stated above, TMST's Motion to Dismiss Goldstone and Simmons's Counterclaims (ECF No. 97) is DENIED.

A separate Order follows.

Dated: April 15, 2011

/s/_____
Richard D. Bennett
United States District Judge