IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Joel I. Sher, Chapter 11 Trustee, | * | |
| Plaintiff, | * | |
| v. | * | |
| SAF Financial, Inc., | * | |
| Defendant, | * | |
| And | * | |
| Larry A. Goldstone and<br>Clarence G. Simmons, III, | * | Civil Action No.: RDB 10-1895 |
| | * | |
| Defendants and<br>Third Party Plaintiffs, | * | |
| v. | * | |
| Thornburg Mortgage Advisory<br>Corporation and Garrett Thornburg, | * | |
| | * | |
| Third Party Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Third Party Plaintiffs Larry A. Goldstone ("Goldstone") and Clarence G. Simmons III ("Simmons") filed a Third Party Complaint alleging, among other things, that Third Party Defendants Thornburg Mortgage Advisory Corporation ("TMAC") and Garrett Thornburg ("Thornburg") are liable to them under theories of equitable indemnification (Count III) and contribution (Count V), and that TMAC alone is liable to them under the theory of contractual indemnification (Count IV). The parties have fully briefed the issues and this Court held a

1

hearing on May 9, 2011. For the reasons that follow, TMAC's and Thornburg's Motion to Dismiss (ECF No. 126) is GRANTED as to Count III (equitable indemnification), but DENIED as to Counts IV (contractual indemnification) and V (contribution).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, a Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Simmons v. United Mort. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. Jan. 21, 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Thus, a court considering a motion to dismiss "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Well-pleaded factual allegations contained in the complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference. *See Twombly*, 550 U.S. at 555 (noting that "courts are not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation marks omitted). Thus, even though Rule 8(a)(2) "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . .

. it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950.

To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has explained recently that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 129 S. Ct. at 1949. The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1937. Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.*

## ANALYSIS

**I.    Equitable Indemnification (Count III)**

In Count III, Goldstone and Simmons allege that if they are found to have engaged in the conduct set forth in the March 2, 2010 complaint filed by the Trustee ("Complaint") then TMAC and Thornburg are responsible for such conduct and are liable under the theory of equitable indemnification. The conduct at issue Goldstone's and Simmons's alleged improper acceptance of bonus payments, breach of standard of care, improper reimbursement of bonus and vendor payments, and improper amendment of the Management Agreement between TMAC and TMST, Inc., f/k/a Thornburg Mortgage, Inc. ("TMST").

TMAC and Thornburg argue that Goldstone and Simmons have not sufficiently alleged that they may be found liable to the injured party, TMST, under a theory of equitable indemnification. In New Mexico,[1] a party may bring an action for equitable indemnification "only in cases where both the indemnitor and the indemnitee are liable to the injured party." *N.M. Pub. Schs. Ins. Auth. v. Arthur J. Gallagher & Co.*, 198 P.3d 342, 349 (N.M. 2008). A party found liable for a wrong who seeks to bring an action for equitable indemnification against another liable party must allege that his conduct in causing the harm was passive, whereas the conduct of the party he seeks to indemnify was active. *Budget Rent-A-Car Sys. v. Bridgestone Firestone N. Am. Tire, LLC*, 203 P.3d 154, 158-159 (N.M. Ct. App. 2008). In other words, in order to state a claim for equitable indemnification in this case, Goldstone and Simmons must establish that the unlawful actions they are accused of in the Complaint were all taken at the direction of Thornburg and TMAC.

Goldstone and Simmons have not alleged that the entirety of their conduct was merely passive and that they merely acted under Thornburg's and TMAC's guidance. To be sure, Goldstone and Simmons allege that a significant portion of the actions they took were at the direction of TMAC or Thornburg, but the Third Party Complaint also shows that Goldstone and Simmons also played an active role in some of the unlawful actions alleged by the Trustee in the Complaint. For example, though the Third Party Complaint states that TMAC and Thornburg determined that TMAC would pay retention bonuses to certain individuals—including Goldstone and Simmons—it was Goldstone who asked TMST's compensation committee to reimburse these bonus payments. Third Party Complaint ¶ 77. While The Third Party Complaint states that independent directors approved of the amendment to the Management Agreement, it also

---

[1] At the May 9, 2011 hearing, the parties agreed that New Mexico law applies to this claim.

4

explains that Goldstone "took steps" to have the amendment to the Management Agreement independently reviewed by counsel. *Id.* ¶ 20. The Third Party Complaint also states that Goldstone consulted with Venable regarding its representation of TMST, and recommended to TMST's Board that Venable was best suited to TMST's needs. *Id.* ¶ 40. The Third Party Complaint alleges that Goldstone and Simmons intended to pursue the Union Savings opportunity by forming a new company, and that both Goldstone and Simmons told TMST's board that they intended to pursue that opportunity on behalf of that new company, later named SAF Financial, Inc. *Id.* ¶¶ 47-48, 56. Thus, the Third Party Complaint does not merely show that Goldstone and Simmons played a passive role in the challenged actions. Instead, the Third Party Complaint contains more than enough allegations that Goldstone and Simmons personally participated in a number of those actions. As a result, they may not bring a cause of action for equitable indemnification against TMAC and Thornburg. Accordingly, Count III must be dismissed.

## II. Contractual Indemnification (Count IV)

In Count IV, Goldstone and Simmons allege that if they are found to have engaged in the conduct set forth in the Complaint filed by the Trustee then TMAC is responsible for such conduct and liable under the theory of contractual indemnification. Pursuant to Section 6.1 of TMAC's Bylaws, TMAC is required to "indemnify and hold harmless any person who was or is made or is threatened to be made a party . . . in any action, suit or proceeding . . . by reason of the fact that he . . . is or was serving at the request of the corporation as director, officer, employee or agent of another corporation." Third Party Complaint ¶ 125; Motion to Dismiss Ex. 4.

TMAC contends that Goldstone and Simmons have not sufficiently alleged that TMAC may be found liable to TMST under a theory of contractual indemnification. In Delaware,[2] contractual indemnification is "dependent on [a person] having acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation." *Green v. Westcap Corp. of Del.*, 492 A.2d 260, 264 (Del. Super. Ct. 1985). Thus, in order to state a claim for contractual indemnification, Goldstone and Simmons must establish that they acted in good faith and not in a manner that was opposed to TMAC's or TMST's best interests.

Goldstone and Simmons have sufficiently alleged that TMAC may be found liable to the injured party, TMST, under a theory of contractual indemnification. Goldstone and Simmons assert in the Third Party Complaint that they acted in good faith to comply with TMAC's and TMST's directions. For example, Goldstone and Simmons allege that they made it known to TMST's Board that they intended to pursue Union Savings and were assured that they created no impediment to others—including TMST—in doing so. Third Party Complaint ¶ 48. Goldstone and Simmons allege that no objection was made to TMAC's reimbursement requests, and that they went through the appropriate process in getting approval for these requests. *Id.* ¶ 78. Furthermore, there are no allegations in the Third Party Complaint that Goldstone and Simmons acted against the best interests of TMAC and TMST. Thus, Goldstone and Simmons have sufficiently stated a claim for contractual indemnification based upon TMAC's Bylaws. Accordingly, TMAC's motion to dismiss is denied as to Count IV.

## V.    Contribution (Count V)

In Count V, Goldstone and Simmons allege that if they are found to have engaged in the conduct set forth in the Complaint filed by the Trustee then TMAC and Thornburg are

---

[2] The parties agree that Delaware law applies to this claim. Motion to Dismiss at 10; Opp'n at 16, n. 10.

responsible for such conduct and liable under a theory of contribution. New Mexico's Uniform Contribution Among Tortfeasors Act shows that "the right of contribution exists among joint tortfeasors." N.M. Stat. Ann. § 41-3-2(A).[3] A joint tortfeasor is defined as "two or more persons jointly or severally liable in tort for the same injury to person or property." N.M. Stat. Ann. § 41-3-1.

As discussed above, the Third Party Complaint alleges that Goldstone and Simmons personally participated in a number of the claims at issue in the Complaint. The Third Party Complaint also explains in great detail TMAC's and Thornburg's active participation. For example, the Third Party Complaint alleges that TMAC and Thornburg made the decision to seek reimbursement of the improper bonus payments. Third Party Complaint ¶ 79. The Third Party Complaint states that Thornburg and TMAC benefitted from the improper vendor payments. *Id.* ¶¶ 73, 120. It also alleges that Thornburg and TMAC directed TMST to appoint Goldstone and Simmons as Chief Executive Officer and Chief Financial Officer, despite their knowledge of the Management Agreement, and that doing so would force Goldstone and Simons "to hold a fiduciary duty to each party to the management agreement." *Id.* ¶¶ 10, 115. Thus, Goldstone and Simmons have stated a valid claim for contribution by showing that Thornburg and TMAC may be found jointly liable for the actions alleged in the Complaint. Accordingly, Thornburg's and TMAC's motion to dismiss Count V must be denied.

## CONCLUSION

For the reasons stated above, TMAC and Thornburg's Motions to Dismiss (ECF No. 126) is GRANTED as to Count III, but DENIED as to Counts IV and V.

A separate Order follows.

---

[3] The parties agree that New Mexico law governs this cause of action. Motion to Dismiss at 12; Opp'n at 19, n. 13.

Dated: May 11, 2011                              /s/_____
                                                 Richard D. Bennett
                                                 United States District Judge